UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CUSTOM COATED
COMPONENTS, INC.,

      Plaintiff,

v.

      File No. 1:06-CV-87

      HON. ROBERT HOLMES BELL

BENTELER AUTOMOTIVE
CORPORATION,

      Defendant.
      _____/

# **O P I N I O N**

This matter is before the Court on Defendant Benteler Automotive Corporation's ("Benteler") motion to dismiss Plaintiff Custom Coated Components, Inc.'s ("Custom Coated") Complaint pursuant to FED. R. CIV. P. 12(b)(6), or alternatively FED. R CIV. P. 56(c). This case was transferred to this Court from the United States District Court for the District of South Carolina. *See* Jan. 25, 2006 Order (Docket #27). The present motion to dismiss was originally filed in the South Carolina district court along with the motion to transfer venue. The district court ruled on the motion to transfer venue only. Jan. 25, 2006 Order. Following the transfer, Benteler's counsel notified this Court that the motion to dismiss required resolution. March 2, 2006 Notice (Docket #37). Because Custom Coated's Chapter 11 bankruptcy plan expressly rejected all executory contracts, Custom Coated cannot

enforce its contract against Benteler. Accordingly, the Court grants Benteler's motion to dismiss Custom Coated's Complaint.

I.

The relevant facts are not in dispute. Benteler is a Michigan automotive parts manufacturer that has a contract with General Motors to manufacture a component of GM's 3800 engine. This component requires insulation. Custom Coated is a South Carolina manufacturing company that produces insulation for various uses, including automotive parts. In July 1998, a sales representative approached Benteler to solicit business for Custom Coated. After negotiating the terms of an agreement, on November 4, 1998, Benteler sent Custom Coated a three-page front and back-sided scheduling agreement for the purchase of insulation. Thereafter, the parties performed under this scheduling agreement. During the duration of their relationship, Benteler sent a new scheduling agreement and acknowledgment when the price of insulation changed or the scheduling agreement expired. Over the next six years, Custom Coated provided insulation for Benteler pursuant to their contract.

On February 16, 2004, Custom Coated voluntarily petitioned under Chapter 11 to reorganize under bankruptcy protection. The petition was filed in the United States Bankruptcy Court for the District of South Carolina. On September 14, 2004, Custom Coated filed a plan of reorganization. Section 6 of the plan provides: "Unless accepted in the Plan under the classes of creditors, effective upon the date of confirmation of this Plan,

all existing executory contracts, agreements, and leases except those addressed by this Plan are rejected." Section 3 of the plan outlines the classes of creditors. It does not mention either Benteler or a contract between Benteler and Custom Coated. On December 23, 2004, the Bankruptcy Court confirmed the plan. On March 23, 2005, the Bankruptcy Court entered an order discharging Custom Coated's bankruptcy.

Prior to Custom Coated's discharge from bankruptcy, on January 5, 2005, Benteler sent Custom Coated the final scheduling agreement prior to this lawsuit. The scheduling agreement extended the agreement until December 31, 2005. During February, Benteler sent two orders for production. At the end of the month, however, Benteler's purchasing manager, John McDonald notified Ernest Candies, Custom Coated's owner and chief executive officer, that Benteler was terminating the contract. Following this notification, on May 31, 2005, Custom Coated filed the present action seeking damages for breach of contract and promissory estoppel.

II.

Benteler filed this motion pursuant to FED. R. CIV. P. 12(b)(6), or alternatively, under FED. R. CIV. P. 56(c). Because the Court has reviewed affidavits and evidence from outside the pleadings, it will review the motion under the Rule 56(c) summary judgment standard. *See e.g.*, *Benzon v. Morgan Stanley Distrib., Inc.*, 420 F.3d 598, 603 (6th Cir. 2005) ("Ordinarily, when a district court considers evidence outside the pleadings, a 12(b)(6) motion will 'be treated as one for summary judgment and disposed of as provided in Rule

3

56.'") (quoting FED. R. CIV. P. 12(b)(6)). Summary judgment is appropriate when the record reveals that there are no issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kalamazoo Acquisitions, L.L.C. v. Westfield Ins. Co.*, 395 F.3d 338, 342 (6th Cir. 2005); *Layne v. Bank One, Ky, N.A.*, 395 F.3d 271, 275 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is whether "the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Tucker v. Union of Needletrades, Industrial and Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in the favor of the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Minadeo v. ICI Paints*, 398 F.3d 751, 756 (6th Cir. 2005).

III.

It is undisputed that the contract between Benteler and Custom Coated was an executory contract. For bankruptcy purposes, an executory contract is "a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." *In re Ravenswood Apts., Ltd.*, 338 B.R. 307, 311 (6th Cir. BAP 2006) (quoting *In re Terrell*, 892 F.2d 469, 471 n. 2 (6th Cir. 1989)

(quoting Vern Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 MINN. L. REV. 439, 460 (1973)).  At the time Custom Coated filed its petition in bankruptcy, both Benteler and Custom Coated had continuing legal responsibilities to one another under the contract. According to Benteler, at the time Custom Coated filed its bankruptcy petition there were two years remaining on its contract with General Motors, and consequently about two years remaining on the contract with Custom Coated.[1]  McDonald Decl. ¶ 12, Exhibit A, Pl.'s Mot. to Dismiss (Docket #5).  Custom Coated does not dispute this fact.  Clearly, at the time Custom Coated filed for bankruptcy a significant portion of the contract to produce insulation for Benteler remained unperformed and failure to complete the performance, by either Benteler or Custom Coated, would have constituted a material breach.  Accordingly, the parties' contract was an executory contract.

It is also not disputed that Custom Coated's plan of reorganization did not list the contract with Benteler on the debtor's schedules, did not list Benteler in the classes of creditors, or specifically address the contract anywhere in the plan. Section 6 of the plan clearly provided that : "Unless accepted in the Plan under the classes of creditors, effective upon the date of confirmation of this Plan, *all* existing executory contracts, agreements, and leases *except those addressed by this Plan are rejected*." (emphasis added).  In light of this clause, resolution of this matter is relatively straightforward and simple.  Section 6 clearly

---

[1] According to Custom Coated, at the time the parties entered into their contract, they agreed that the duration of the contract would be the same length as Benteler's contract with GM.  Candies Aff. ¶ 10.

and unequivocally provides that, unless an executory contract, agreement, or lease is addressed in the plan or is accepted under the classes of creditors it is rejected. There is no mention of the contract with Benteler in the plan and certainly no indication that the contract was accepted under the classes of creditors. Consequently, by the express terms of the plan, drafted by Custom Coated for its reorganization, the executory contract with Benteler was rejected.

Under 11 U.S.C. § 365(g)(1), the rejection of an executory contract constitutes a breach of that contract from the date immediately before the filing of the Chapter 11 petition. 11 U.S.C. § 365(g)(1). Furthermore, the rejection of the executory contract precludes Custom Coated from enforcing it against Benteler or availing itself of the contractual benefits. *See In re Schnabel*, 612 F.2d 315, 317 (7th Cir. 1980) (noting that rejection of an unexpired lease in bankruptcy, "has the effect of relieving the estate of 'any future burdens imposed by the contract,' but it also means the estate 'may no longer avail itself of the contract's benefits . . . .'") (quoting *Danning v. Brunswick Corp.*, 466 F.2d 1010, 1011 n. 1 (9th Cir. 1972)); *In re Lason, Inc.*, 290 B.R. 504, 506 (Bankr. D. Del. 2003) (precluding Chapter 11 debtor from enforcing non-compete provisions contained in employment agreements that were rejected in the plan of reorganization); *In re United Assocs. of Delaware, L.P.*, 140 B.R. 368, 372 (Bankr. D. Del. 1992) ("Bankruptcy law does not allow a debtor to reject a contract but still maintain its benefits."). Accordingly, Custom Coated is precluded from enforcing any contractual right against Benteler because the rejection of

the contract in the plan of reorganization relieved it of any right to benefit from or enforce the contract.

Custom Coated has not disputed that the Benteler contract was an executory contract. Nor does it dispute that the contract was not mentioned in any way in the reorganization plan. In addition, it also candidly acknowledges that the plan did provide that all executory contracts not specifically addressed in the plan were rejected. In spite of this, it argues that it did not specifically reject the Benteler contract, and therefore, can now enforce it. According to Custom Coated, Section 6 of the plan of reorganization does not operate to reject all executory contracts not specifically mentioned in the plan, rather it argues that an executory contract can only be rejected after being specifically considered by the bankruptcy court.

Custom Coated's position is in direct opposition to the express language it drafted and included in Section 6. Rather than giving effect to the clause's clear and unambiguous language, Custom Coated argues that the executory contract with Benteler was not rejected because it was not specifically referenced in the plan. This is directly contrary to the express language of Section 6. According to the clause, if an existing executory contract is not "addressed by this Plan" it is rejected. In other words, if the plan does not specifically reference an executory contract, that contract is rejected. Adopting Custom Coated's position would render Section 6 meaningless surplusage.

In support of its position, Custom Coated directs the Court to two bankruptcy court decisions from Florida and Washington. *See In re Continental Country Club, Inc.*, 114 B.R. 763 (Bankr. M.D. Fla. 1990); *In re Parkwood Realty Corp.*, 157 B.R. 687 (Bankr. W.D. Wash. 1993). In both cases, the bankruptcy court considered whether a blanket rejection of all executory contracts contained in a plan of reorganization was effective to reject a specific contract. *In re Continental Country Club Inc.*, 114 B.R. at 766-67; *In re Parkwood Realty Corp.*, 157 B.R. at 690-91. Both bankruptcy courts concluded that a plan's "boilerplate" language rejecting all executory contracts was not effective to reject a particular contract, rather, rejection of an executory contract required actual consideration by the bankruptcy court. *Id.*

Custom Coated's reliance on these cases is undermined, however, by the fact that the discussion of the blanket rejection clause in *In re Continental Country Club, Inc.* was dicta. Prior to discussing the effectiveness of the blanket rejection clause, the bankruptcy court held that the rejection of the executory contract at issue in that case was not effective because the clause was not in a plan offered by a debtor or trustee. *In re Continental Country Club, Inc.*, 114 B.R. at 766. The bankruptcy court held that the power to reject or assume an executory contract was limited to a debtor-in-possession or trustee, therefore, the rejection was not effective. *Id.* The bankruptcy court then discussed whether a "boilerplate" rejection clause was effective. The bankruptcy court in *In re Parkwood Realty*, in turn, relied on this dicta to reach its holding. The Court declines to follow *In re Parkwood Realty* in relying on the

8

dicta of *In re Continental Country Club*. Moreover, both cases are distinguishable because in both cases, the bankruptcy courts appear to be primarily concerned with the due process rights of the creditor seeking to enforce its contract. *See In re Greater Southeast Community Hosp. Corp. I*, 327 B.R. 26, 35 (Bankr. D. D.C. 2005) ("*Parkwood Realty* turned on due process concerns, and only secondarily questioned the effectiveness of a plan provision deeming executory contracts rejected."). In both cases, the creditor attempting to enforce the purportedly rejected contract was never given any notice that the debtor (or plan proponent) considered the contract to be executory or that the contract was being rejected. *In re Continental Country Club, Inc.*, 114 B.R. at 767; *In re Parkwood Realty*, 157 B.R. at 691. Accordingly, the bankruptcy courts indicated that due process required that the creditor be given actual notice of the rejection and an opportunity to be heard.

The due process concerns underlying *In re Continental Country Club* and *In re Parkwood Realty*, are not at issue in this case. The party asserting that the blanket rejection of executory contracts is not effective in this case is the drafter of the plan, and thus, unlike the creditors in *In re Continental Country Club* and *In re Parkwood Realty*, clearly was well aware of the contents of the plan, particularly the treatment of existing executory contracts. Therefore, the due process concerns at issue in the cases relied upon by Custom Coated are not implicated in this case. Moreover, Custom Coated presumably knew its existing contractual obligations and selected the clear and unambiguous language rejecting all executory contracts that were not specifically addressed in the plan.

9

Furthermore, by describing Section 6 as "boilerplate," Custom Coated appears to be arguing that the clause can be disregarded or ignored. Although Section 6 may be formalistic, this simple fact does not give the Court license to disregard the express, unambiguous language of the clause. To disregard particular language selected and included in a plan because it was "boilerplate" would open up a variety of routinely-used contractual language, both in bankruptcy reorganization plans and contracts in general, to broad, speculative attack. The better view is to give effect to the plain and unambiguous language of the plan, whether boilerplate or original. As succinctly expressed by the Second Circuit:

> [w]here complex concepts are regularly expressed, counsel may wisely utilize word combinations that they have tried and tested . . . We prefer to presume that the language of legal instruments is deliberately selected, not as filler, but because its words convey a desired idea. At no time should the source of language affect its efficacy. Rather, each word is to receive its customary meaning and natural interpretation, whether inserted as boilerplate or by particularized design.

*In re Victory Markets, Inc.*, 221 B.R. 298, 304 (2d Cir. BAP 1998) (holding that Chapter 11 debtor rejected a lease because the lease was not mentioned in the debtor's schedules and the plan contained a blanket clause rejecting all executory contracts and leases not mentioned in the schedules).

Finally, Custom Coated briefly contends that, following the confirmation of the plan of reorganization, Benteler reaffirmed and ratified the contract by continuing to perform under it. Custom Coated has not offered any applicable law supporting the position that, following the rejection of an executory contract in bankruptcy, a party can reaffirm and ratify

10

a contract through continued performance. In fact, this position appears to be directly contrary to established law on the rejection of executory contracts. *See In re United Assocs. of Delaware*, 140 B.R. at 372 (holding that when a contract is rejected in bankruptcy, a debtor is not entitled to enforce the contract and may only recover the reasonable value of post-petition services) (citing *Nabisco v. Bildisco & Bildisco*, 465 U.S. 513, 531 (1983)). Consequently, Custom Coated's argument is unavailing.

Based upon the clear and unambiguous language of Custom Coated's plan of reorganization, Custom Coated rejected all executory contracts that were not specifically addressed in the plan. The Benteler contract was an executory contract but was not mentioned in the plan. Accordingly, by the terms of the plan, the contract was rejected and Custom Coated cannot enforce it. Therefore, Custom Coated's Complaint must fail. Accordingly, Benteler's motion to dismiss Custom Coated's Complaint is granted. An order will be entered consistent with this opinion.


Date:      June 9, 2006             /s/ Robert Holmes Bell
                                    ROBERT HOLMES BELL
                                    CHIEF UNITED STATES DISTRICT JUDGE